Cruikshank v. Parker.

DWIGHT P. CRUIKSHANK et al., trustees &c., appellants,

*v.*

CHARLES W. PARKER, respondent.

The will of Rufus Story conveyed all the rest and residue of his estate to his executors, *in trust*, to sell, dispose of and convey the same, with a further trust to divide the estate into four shares for each of his daughters. The trustees were directed to convey to each of three daughters one share absolutely and the other was to be held and invested and kept invested by them during the life of his fourth daughter, who was to be paid the income arising therefrom, and on her death to be conveyed to her issue.—*Held* that, under the terms of his will, the power to sell continued after the division of the estate into the four shares, and that a bill would lie to enforce specific performance of an agreement between the trustees and a purchaser of a lot which was a part of the land of the testator, thus set apart for the fourth daughter for her life.

On appeal from an order of the chancellor, whose opinion is reported in *Cruikshank et al. v. Parker, 6 Dick. Ch. Rep. 21.*

*Mr. Isaac S. Taylor*, for the appellants.

*Mr. Gilbert Collins*, for the Parets.

*Mr. De Witt Van Buskirk* and *Mr. Charles W. Parker*, for the respondent.

The opinion of the court was delivered by

ABBETT, J.

The questions in this case arise upon a bill praying for specific performance of a contract for sale of land and a demurrer thereto, which demurrer was sustained by the chancellor. Before the determination of this cause, upon suggestion of the court and the parties to the suit consenting thereto, the four daughters of Mr. Story and the husband and children of Mrs. Paret were brought in as additional parties, and under consents and by orders of the court, so that all the parties in interest under the will should be bound by the decision in this case.

Rufus Story died October 5th, 1887, seized of the land in question, with other property. He left a will, with two codicils annexed thereto, copies of which are annexed to the bill of complaint.

He left him surviving, his widow, Ursula Story, who died October 16th, 1891, and four children, his devisees and heirs-at-law, to wit, Mary E. Palmer, Alice Rowland, Emily L. Paret, wife of John Paret, and Abby A. Marshall, wife of Charles C. Marshall. The will, which is dated January 3d, 1884, and the two codicils thereto, dated respectively July 30th, 1886, and April 25th, 1887, were admitted to probate December 14th, 1887, and letters testamentary issued thereon to his executors named therein, except Elias J. Herrick, who refused to act. The executors were also made trustees under the will, as therein set forth.

A partition or division of a large part of the lands of Rufus Story was made and has been confirmed by a decree of the court of chancery, dated November 30th, 1891. The views of the chancellor as to this division and the rights of the said executors and trustees are stated in *Story* v. *Palmer, 1 Dick. Ch. Rep. 1.* The bill was dismissed in that case October Term, 1889, as premature, but, November 30th, 1891, upon another bill, the partition of a portion of the real estate of which Rufus Story died seized, and including the premises in question, was made, the court confirming said partition. Thereafter the said trustees sold

two lots (a part of the share set apart for Mrs. Paret) to Charles W. Parker, by agreement dated May 25th, 1892. He refused to take the lots on the ground that the trustees had no power to sell the same.

Complainant's bill was demurred to on the following grounds:

*First.* Because the bill does not state a case that entitled the complainants to any relief as against the defendant, as to any matters contained therein.

*Second.* Because, by the allegations of said bill, it appears that the complainants have no power or authority, under the will of Rufus Story or the codicils annexed thereto, to make sale and conveyance of the lands described in the said contract of sale.

The demurrer was sustained upon the ground that the complainants had no power to sell any real estate set apart by said partition as the share of Emily L. Paret, and that if this conclusion is not correct, that the question is so serious that the case is one in which specific performance should not be decreed.

The will, after making certain specific bequests and devises, devises and bequeaths the entire residue of the estate, real and personal, to the executors, the survivors and survivor of them, or to such of them as may qualify, and the survivors and survivor of them, *in trust,* to and for the uses and purposes therein stated.

Among the trusts affecting this residuary estate, as set forth in the will and codicils, are—

*First.* That they, the trustees, sell, dispose of and convey the same at public or private sale at such times and on such terms as they, in their, his or her discretion, may think proper.

*Second.* That they divide such real and personal estate or the proceeds thereof into four equal parts or shares, one of such shares for each of testator's daughters (naming them). They are directed to convey, pay and assign the shares of his three daughters (excluding Mrs. Paret) to them absolutely. They are directed to deduct from Mrs. Paret's share the sum of $49,539.28, which amount is to be equally divided among his other three daughters, and the survivors and survivor of them,

and the issue of any of them who may have died, such issue to take by representation. The remainder of the share of Mrs. Paret, left after this deduction, the second codicil provides, shall be held and invested, and kept invested during her life, by his executors and trustees, who shall collect and pay or apply the interest and income thereof to the use of his daughter Emily, Mrs. Paret, so long as she shall live, and if she be not living, or on her death, that his executors and trustees convey, pay and assign such residue of such share to her issue absolutely.

The sixth clause of his will authorizes and empowers his executors to pay all taxes and assessments which may be imposed upon his property, until the division or sale thereof; to pay all premiums of insurance and sums necessary to keep the buildings in good repair; to lease or rent any of his real estate until such sale or division, and to make all divisions and partitions of his real and personal estate or the proceeds thereof, and also to make, seal, execute and deliver all necessary deeds or other instruments in writing, with or without seal, necessary in the premises.

The will vests the entire legal estate in said residue of the lands of which Rufus Story died seized, in the trustees named in the will.

The chancellor holds that the power of sale exists only for the purpose of creating the four shares, one for each daughter mentioned in the will, and that after said division or partition of the residuary estate the trustees must hold Mrs. Paret's share, just as it had been set off, for the benefit of herself and her children, without the power to sell any of this real estate, although it may be unproductive or depreciating in value. If this view is correct, they cannot sell even to provide Mrs. Paret an income therefrom during her life; they cannot sell even to stop the accumulation of taxes and assessments on unproductive real estate. The ruling below might seriously affect the estate and deprive her of income under certain contingencies, and that, too, without benefiting in any way her issue, who are to take absolutely after her death.

If we can ascertain the intention of the testator, that must govern. The only object of construction is to ascertain his will. The language should be very clear to warrant a construction that might lead to such results as might flow from excluding Mrs. Paret's share from the exercise of the trustees' discretion to sell when proper occasion demanded it.

An examination of the will and codicils will satisfy anyone that the testator entertained great affection for all of his daughters, and intended to make a division of his estate among them that should be equally just to all. After dividing his estate into four shares, one for each of his daughters, he took into consideration the fact that he had loaned or advanced to the husband of his daughter, Mrs. Paret, nearly fifty thousand dollars, and he deemed it just that this sum should be repaid out of the one-fourth share allotted to her, and be divided among his other daughters, and the indebtedness thus canceled. He directed his trustees to give to his other three daughters their shares absolutely. For reasons which seem readily apparent upon the face of the will and codicils, he determined to protect his daughter, Mrs. Paret, by securing to her an assured income from her share during her life, and to secure this income to her he directs, in his second codicil (after having revoked and annulled, in his first codicil, the appointment of Mr. Paret as executor and trustee under his will), that the said remainder of her share should be held and invested and kept invested, during her life, by his trustees, who were to collect and pay or apply the interest and income thereof to her use during her life, and on her death were to convey the same to her issue absolutely.

There is nothing in the will or codicils which is inconsistent with the continuance, after such division, of the power of sale which is expressly given to the trustees in the fifth paragraph of the will. On the contrary, there is strong reason for its continuance as affecting the one-fourth share set apart for the benefit of Mrs. Paret. There is nothing in the will or codicils that should induce us to conclude that when he gave his trustees the broad and unqualified power to sell, in their discretion, all or any part

of his residuary estate, that he only had in contemplation the interests of his three daughters, and that it was his desire to limit the use of this power so as to be only for their benefit and for the purpose of making a division, so that their share might come to them absolutely without trouble or difficulty. Why should he limit this power so as to make it available only for the benefit of his three daughters, who were to immediately get their share of his estate absolutely? He had clearly expressed his intention that his daughter, Mrs. Paret, should get the income of her share during her life, and is it conceivable that, with this intention to secure her such income with certainty, he intended to tie up all the real estate in her share so that his trustees, in whom he reposed unlimited confidence, could never sell or dispose of the same, no matter how clear it was to them that the interests of Mrs. Paret, and her children after her, demanded that certain land in her share should be sold, so as to produce an income? This father, when he made his will, was not thinking primarily of Mrs. Paret's children, but of her, his own daughter, and of securing to her an income during her life. With this object in view, the will vested his entire legal estate in the trustees. The superadded power of sale did not render the devise of the fee to the trustees invalid; the legal estate remained in fee simple in the trustees, liable to be extinguished only by the trustees under the power of sale, or by their conveyance thereof under the terms of the trust.

They extinguished the legal estate to the land set apart by said partition or division to represent the shares of the three daughters, Mrs. Palmer, Mrs. Rowland and Mrs. Marshall, by absolute conveyances to each of said daughters. The legal estate in the land set apart by said partition or division to represent Mrs. Paret's share they did not convey to anyone. The legal estate therein remained in them by the second codicil, to "be held and invested and kept invested during her life," and they were directed to "collect and pay or apply the interest and income thereof to the use of his daughter Emily [Mrs. Paret] so long as she shall live," and after her death to—

"pay and assign such residue of such share [such residue being the one-fourth of the real and personal residuary estate set apart by said division in severalty for Mrs. Paret, less the $49,539.28 to pay Mr. Paret's debts] to her issue absolutely."

The power of sale and the trusts imposed on this land originally by the will were, therefore, as applicable to this land, when set apart in severalty for Mrs. Paret and her issue, as when this land was originally conveyed to the executors in trust. This would be the rule at law in reference to partition of land held jointly by several persons. If the will had devised the residuary estate to the four daughters directly, a partition thereof would not have produced any effect upon or alteration of their estate in the land; it would merely have severed the possession, and thereafter each, instead of being seized of an undivided fourth, would have become seized in entirety of one-fourth, and that occupation and estate which before was in common would have become several and distinct. *Den, ex dem. Howell,* v. *Howell, Spenc. 411, 416.* This rule should be applied to the equitable estates of the daughters, and the partition or division which set apart the land in question (with other land) merely set it apart in severalty, so that thereafter the trusts affecting Mrs. Paret's share affected this land in severalty. The power of the trustees to sell continued as to this land, because it was part of the land that originally passed to them under the will, in trust, and they still hold the legal title thereto under the will. The language of the second codicil shows clearly that there was no intention to extinguish this power of sale, because the trustees were to invest and keep invested Mrs. Paret's share, which consisted of both real and personal estate. We cannot read the second codicil so that the trustees shall hold the real estate thus set off for Mrs. Paret during her life, and only invest such personal property as was set off for her share, without supplying language which the testator did not use and changing the clear meaning of that which he did use. The testator having given the trustees power to sell all or any of the residuary estate of which he died seized, when he came to this share, set apart in severalty for Mrs. Paret and her issue, naturally used the word

---

" invested " with reference to both real and personal estate; both were to be held and invested, under all the powers and trusts of the will, for the purpose of carrying into effect his primary object of securing a certain life income to Mrs. Paret.

The power of the trustees to sell as well after as before the setting apart of Mrs. Paret's share in severalty, is clear under the will and the codicils annexed thereto. This interpretation will also enable the trustees to better preserve and manage this part of Mr. Story's estate.

The power of sale being clear, the purchaser would take a good title to the premises by deed from the trustees, and a bill for specific performance will lie to compel Parker to carry out the terms of his written agreement of May 25th, 1892.

The demurrer should have been overruled, and the order that it should stand and be allowed should be set aside and reversed.

*For reversal*—ABBETT, DEPUE, DIXON, GARRISON, LIP-PINCOTT, REED, VAN SYCKEL, BOGERT, BROWN, SMITH—10.

*For affirmance*—None.